IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GEORGE W. GANTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:09CV40 |
| | ) | |
| RICKY ANDERSON, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 27, 1987, in the Superior Court of Guilford County, Petitioner pled guilty to one count of second-degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, and one count of armed robbery in cases 86 CRS 25052-53 and 87 CRS 20029-30. (Docket Entry 43, Ex. 2.) Pursuant to the exact terms of his plea bargain, Petitioner received a "Class C" life sentence to run concurrently with a 25-year sentence he was already serving in Maryland, a 20-year sentence that was consecutive to the life sentence and the Maryland sentence, a 20-year sentence that was concurrent with the life sentence and the Maryland sentence, and a 14-year sentence that was consecutive to all of the other sentences. (Id.) Petitioner did not appeal.

Not long after sentencing, Petitioner was transported to Maryland. He remained in that state's custody until November 4, 2005. (Id., Ex. 3.) The record does not show that Petitioner

submitted any meaningful motions or petitions to the North Carolina courts while he was in Maryland or immediately upon his return.[1] However, he filed a motion for appropriate relief in the trial court on February 28, 2008. That motion was summarily denied. (Id., Ex. 4.) Petitioner then spent the greater part of the next year unsuccessfully pursuing that motion and other filings in the state courts before filing his Petition with this Court on January 15, 2009. The Petition is signed and dated as having been placed in the prison mail system by Petitioner on December 22, 2008. (Docket Entry 2 at 15.) The Clerk received the Petition on January 15, 2009. (See Docket Entry 2.) Respondent has filed a Motion for Summary Judgment (Docket Entry 42) and Petitioner has filed several responsive pleadings (Docket Entries 51-56).

## Claims in the Petition

Petitioner sets out four claims for relief in his Petition.[2] First, he contends that his trial attorneys lied to him about his future parole eligibility, ignored his right to a jury trial, and advised him to lie about his medication during his plea colloquy. Petitioner adds that North Carolina Prisoner Legal Services refused

---

[1]The record contains a letter sent to Petitioner by North Carolina Prisoner Legal Services in January of 1990. (Docket Entry 43, Ex. 14, Attachs.) It appears that Petitioner asked that organization for help in December of 1989, but was told that it could not help him while he was incarcerated in Maryland. The record also contains documents related to jail grievances and a request for documents from that time-period. (Docket Entry 51, Exs.) Petitioner's exhibit list attached to Docket Entry 51 states that Exhibit 11 is a motion for appropriate relief filed in 1987. However, no such motion appears in his exhibits.

[2]Petitioner later filed an amended Petition which mainly restates his original four claims to varying degrees, but does not make any important or substantive changes to his claims. (Docket Entry 11.)

-2-

to represent him on appeal. (Docket Entry 2, ¶ 12, Ground One.) Second, Petitioner claims the North Carolina Parole Commission has changed its "formula" in the time since his conviction and that he now suffers a harsher punishment than called for by the Fair Sentencing Act applicable at the time of his sentencing. (Id., Ground 2.) Third, Petitioner argues that the increase in punishment breaches his plea agreement and violates the United States Constitution's prohibition of ex post facto laws. (Id., Ground 3.) Fourth, Petitioner restates portions of his prior claims, asserts that his plea agreement was ambiguous, and alleges that his sentence was reformulated during his incarceration in Maryland. (Id., Ground 4.)

Petitioner's last three claims all relate to a change in North Carolina law that did occur while Petitioner was in Maryland. Petitioner was sentenced under the Fair Sentencing Act. That Act was repealed and replaced on October 1, 1994, by the 1994 Structured Sentencing Act. See State v. Bright, 135 N.C. App. 381, 381-82, 520 S.E.2d 138, 139 (1999). Petitioner's pleadings in this Court and in the state courts generally reveal that he believes he received a "50 year life sentence" in 1987 (see, e.g., Docket Entry 52 at 2) which was converted into a life sentence or a life sentence without parole by the Parole Commission based on either the Structured Sentencing Act or rules and regulations formulated under that Act.

**Discussion**

Respondent argues, inter alia, that the Petition was filed[3] outside of the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA"). 28 U.S.C. § 2244(d)(1). The AEDPA amendments apply to petitions filed under § 2254 after April 24, 1996. See Lindh v. Murphy, 521 U.S. 320 (1997).

In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[3]"In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 Fed. Appx. 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 Fed. Appx. 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court declines to consider this matter further.

-4-

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

Here, Petitioner did not seek a direct appeal. Therefore, his conviction became final in 1987, well prior to the passage of AEDPA. Defendants like Petitioner, whose convictions became final prior to the effective date of AEDPA, had one year from its effective date, or to and including April 24, 1997, to file a Section 2254 petition. Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000). Petitioner did not do so and, in fact, did not file his Petition for more than eleven years after that date. Accordingly, unless another provision of § 2244(d) affords Petitioner an alternate filing period, his Petition is out of time.

The time to file a petition can also begin running on the date "on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Petitioner makes references to this section, but never points to any state-created

impediment to filing other than the fact that he was incarcerated in Maryland until 2005. The Court will discuss that matter in conjunction with its analysis of § 2244(d)(1)(D). Petitioner certainly points to no unlawful action by the State of North Carolina that would have impeded his filing of the instant Petition.

The limitation period also can commence when "the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). Petitioner does not make any claim based on recent Supreme Court case law. Therefore, § 2244(d)(1)(C) does not affect the timeliness of the Petition.

Finally, a petitioner's year to file can begin on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner relies most heavily on this provision of the statute, particularly in connection with his incarceration in Maryland until November 4, 2005. However, even if the Court excluded all of the time Petitioner spent in Maryland, his Petition is still late because he was returned to North Carolina more than two years before he first raised his claims in state court and more than four years before he filed his Petition in this Court.

Petitioner correctly notes that the one-year limitation period is tolled for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999).[4] However, even with such tolling, the Petition is still out of time. Petitioner returned from Maryland on November 4, 2005. If his time to file began to run on that date, it expired in November of 2006, or more than a year before Petitioner filed his motion for appropriate relief in the state courts in February of 2008. Therefore, his time to file in this Court ended well before any post-conviction tolling could occur. The filing of post-conviction motions after the time to file under § 2244(d)(1) has expired does not restart or revive the time to file. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Under these circumstances, Petitioner's instant federal habeas filing could survive § 2244(d)'s time bar only if Petitioner can demonstrate that he could not have discovered the factual predicates for his claims until less than a year before he filed

---

[4]Tolling for state collateral review does not include time for pursuing certiorari with the United States Supreme Court. See Atkinson v. Angelone, 20 Fed. Appx. 125, 127-28 (4th Cir. 2001); Crawley v. Catoe, 257 F.3d 395, 397-401 (4th Cir. 2001); Torres v. Lee, No. 1:05CV661, 2006 WL 1932328 (M.D.N.C. July 11, 2006) (unpublished) (recommendation of Dixon, M.J., adopted by Beaty, J.), appeal dismissed, 207 Fed. Appx. 269 (4th Cir. 2006); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 597 (M.D.N.C. 2004) (recommendation of Eliason, M.J., adopted by Osteen, Sr., J.).

his motion for appropriate relief in February of 2008. Petitioner does make this argument, but to no avail.

The most complete and coherent statement of Petitioner's contention in this regard appears in his "Memorandum in Support of Opposition to Respondent[']s Motion For Summary Judgement [sic]." (Docket Entry 52 at 20.) There, Petitioner goes into some detail setting out when and how he learned of the alleged changes in his parole treatment that underlie most of his claims. Petitioner states that he learned of the facts from records and an old letter that he received upon request from parole and prison officials. Unfortunately, Petitioner's argument shows only when he <u>actually did learn</u> of the facts supporting his claims, not when he <u>could have learned</u> of them through the exercise of due diligence.

The Structured Sentencing Act became effective in 1994, well before Petitioner returned from Maryland. Petitioner fails to explain why, upon his return to North Carolina in November of 2005, he could not have immediately discovered his parole eligibility date and the alleged changes by taking the same steps he later used to seek records from prison and parole officials. For this reason, Petitioner has failed to show that he could not have discovered the factual basis for his claims by using due diligence beginning on November 4, 2005. At the latest,[5] his time to file began to run on that date and expired a year later without his having filed a

---

[5] In addition, Petitioner likely could have written North Carolina officials and learned of his parole date at any time during his incarceration in Maryland. The Court need not consider that matter because Petitioner was transferred back to North Carolina more than a year before he presented this issue to a state or federal court.

federal habeas petition or any state court motions that would toll the running of the AEDPA time limit. The Petition is, therefore, out of time under § 2244(d)(1).

Petitioner does raise one other argument of note. He asks that this Court employ a "continuing violations doctrine" because the alleged new parole rules are continual acts that increase his punishment. (Docket Entry 2, ¶ 18.) It is not clear that a "continuing violations" theory can toll or otherwise affect the running of AEDPA's limitations period. See generally McAleese v. Brennan, 483 F.3d 206, 218 (3d Cir. 2007) (questioning availability of theory). However, if it can, it does not aid Petitioner in this case. Where the doctrine applies, "'[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'" Broom v. Strickland, 579 F.3d 553, 555 (6th Cir.) (quoting Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007)), cert. denied, 130 S.Ct. 636 (2009).

Here, Petitioner alleges that his sentence was somehow changed or affected by the passage of North Carolina's Structured Sentencing Act in 1994. He sets out no facts showing any new unlawful acts that would render any of his claims timely even under a continuing violation theory. Instead, Petitioner complains about his continued detention based on violations that, if they occurred,[6] occurred while Petitioner was incarcerated in Maryland.

---

[6]As Respondent points out, North Carolina's Structured Sentencing Act applies only to offenses that occurred "on or after October 1, 1994." N.C. Gen.
(continued...)

In sum, Petitioner's time to file under AEDPA began to run, at the latest, upon his return to North Carolina in 2005. It expired before he sought any relief in federal or state court. Respondent's motion for summary judgment should be granted on the ground that the Petition is time-barred.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 42) be **GRANTED**, that the Petition (Docket Entry 2), as amended (Docket Entry 11), be **DENIED**, and that Judgment be entered **DISMISSING** this action.

                                        /s/ L. Patrick Auld
                                         **L. Patrick Auld**
                             **United States Magistrate Judge**

September 29, 2010

---

[6](...continued)
Stat. § 15A-1340.10. Petitioner points to nothing beyond his own allegations to show that said Act somehow affected his life sentence. Overall, Petitioner appears to simply be confused by documents related to his convictions. The statute under which he was sentenced on the second-degree murder charge allowed punishment by "imprisonment up to 50 years, <u>or</u> by life imprisonment, or a fine, or both imprisonment and fine." N.C. Gen. Stat. § 14-1.1(a)(3) (emphasis added) (repealed 1994). Both Petitioner's Transcript of Plea form and the judgment for his second-degree murder case mention terms of years or the 50-year maximum term for Class C felonies. (Docket Entry 43, Exs. 1, 2.) Petitioner appears focused on this language. However, the documents also mention life imprisonment, which was an alternative sentence to a term of years. More importantly, the documents make it clear that Petitioner's plea bargain provided for life imprisonment, not for 50 years or any other set term, and that he received a sentence of life imprisonment in 1987. (<u>Id.</u>) A person who received such a sentence was not eligible for parole for at least twenty years. <u>Teasley v. Beck</u>, 155 N.C. App. 282, 286, 574 S.E.2d 137, 139-40 (2002). One of the responses to Petitioner's prison grievances indicates that he became eligible for parole on October 18, 2006. (Docket Entry 51, Ex. 2.) Petitioner may fail to realize that eligibility for parole does not equal entitlement to parole at any particular time.